**NACCHIO et al. v. NEW YORK LIFE INS. CO.**

Civ. A. No. 10254.

United States District Court
E. D. Pennsylvania.

March 30, 1951.

On Defendant's Motion to Amend
Dec. 17, 1951.

Harry R. Kozart and Jacob J. Kilimnik, of Philadelphia, Pa., for plaintiffs.

J. S. Conwell, Thos. E. Comber, Jr., and Francis E. Marshall, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is a civil action to collect the face amount of a life insurance policy plus that part of the premium paid but unearned before insured's death.

A jury trial was waived and a stipulation of facts was filed, each party reserving the right to object to relevancy. At the hearing before me the plaintiff objected to the relevancy of some of the facts set forth in the agreed stipulation. At the conclusion of the hearing plaintiffs submitted a motion for judgment in their favor and defendant also submitted a motion for judgment in its favor.

I make the following special Findings of Fact:

1. Plaintiffs are Anthony Nacchio, Joseph Nacchio and John Nacchio, a minor,[1] by his natural guardian and mother, Marie Nacchio, all residents of Pennsylvania.

2. Defendant is New York Life Insurance Company, a New York corporation, doing business in Philadelphia, Pennsylvania.

3. On November 5, 1947 Edmond Nacchio applied to defendant for a policy of life insurance in the sum of $7500.

4. Pursuant to that application, Edmond Nacchio was examined by Dr. Charles H. J. Barnett, the medical examiner of defendant, on November 13, 1947.

5. That application for insurance was approved by defendant and policy No. 19,201,168 in the face amount of $7500 was issued to and delivered to Edmond Nacchio December 6, 1947. That policy is not involved in the present action.

6. On December 29, 1947 Edmond Nacchio made a written application to defendant for a policy of life insurance.

7. On January 6, 1948, pursuant to this application, and without any medical examination, defendant issued the policy involved in the instant suit No. 19,203,954 in face amount of $3000 to Edmond Nacchio (hereinafter called insured).

8. On January 10, 1948 this policy was delivered to insured's brother, who paid the first premium with his personal check.

9. Plaintiffs are the beneficiaries named in this policy.

10. Insured died April 6, 1948.

11. Due proof of death was submitted to defendant, who refused to pay the proceeds of the policy but tendered $116.39, the amount of the premium paid, together with seven months after the complaint was filed.

1. John Nacchio became twenty-one years of age on June 23, 1950, approximately

interest, to Marie Nacchio, the executrix of insured's estate.

12. This tender was refused.

13. By its answer to the complaint, defendant has renewed this tender.

14. The application, as signed by insured on December 29, 1947, included only "Application to the New York Life Insurance Company—Part I".

15. The application, as attached by defendant to the policy when issued on January 10, 1948, included (a) Part I referred to above, (b) a Part II insured's "Answers to the Medical Examiner" given and signed by insured at the time of the medical examination for the prior $7500 policy and dated November 13, 1947, (c) a hand written, signed statement of insured dated November 21, 1947 certifying his correct date of birth, (d) an amendment dated December 2, 1947, signed by the insured, agreeing that insurance be written with age advanced eight years, and (e) a similar amendment dated January 6, 1948 but not signed by insured. Photostatic copies of these papers are attached to the complaint.

16. Insured did not consent to defendant's attaching to his policy in suit the papers in (b), (c), (d) and (e) listed in the preceding paragraph.

17. A self health certificate dated January 6, 1948 was signed by insured. A photostatic copy is attached to the filed "stipulation of facts."

18. This self health certificate was delivered by insured's brother on January 10, 1948 to an agent of defendant when the brother received the policy and paid the first premium thereon.

19. This self health certificate provided in part: "The foregoing Declaration [of health] is an amendment to and is hereby made a part of my said application * * *."

20. This self health certificate was not attached to insured's policy.

### Discussion

The crux of this case is whether the application, or any part thereof, is admissible in evidence. The law of Pennsylvania is the applicable law.

The application for insurance in Part I, which under the terms of the policy is a part of the policy, provides in part: "It is mutually agreed as follows: That the insurance hereby applied for shall not go into force unless and until the policy is delivered to and received by the Applicant and the first premium thereon paid in full during his lifetime, *and then only if the Applicant has not consulted or been treated by any physician or practitioner * * * since the time of making this application* if no medical examination is made, and thereupon the policy shall be deemed to have taken effect as of the date specified * * * above." (Emphasis supplied.)

This quoted provision of the application fixes a condition precedent to the effectiveness of the policy. Benzinger v. Prudential Insurance Company of America, 317 Pa. 561, 176 A. 922. Defendants contend therefore that the policy in suit never became effective, since it is admitted that the insured did consult and was treated by physicians between the date of the application and the delivery of the policy.

The insured made the application for insurance on December 29, 1947, and the policy was delivered on January 10, 1948. On December 31, 1947 insured consulted Dr. Frank Briglia and entered the Graduate Hospital on January 7, 1948 and remained there until January 14, 1948. The history, as appears by the hospital record, was that about six weeks previous on arising in the morning he had found a large, non-tender swelling in the right infra costal margin which made him uncomfortable at night and caused him to toss and turn. Upon his admission to the Graduate Hospital, he was given a physical examination by Dr. Tracy, whose impression is recorded on the hospital record as "cancer with metastic liver involvement."

On January 7, 1948, a fluoroscopic study of insured's chest was made by Dr. Smith; and on January 9th fluoroscopic studies of the esophagus, stomach and duodenum; and in conjunction with these fluoroscopic studies x-ray films were taken by Dr. Zion and reviewed by Dr. Finkelstein.

While in the Graduate Hospital insured consulted and was treated by Dr. William

Bates, who on January 10, 1948 dictated into the hospital record: "Whereas this mass feels as if it may be a portion of the liver, the negative liver function tests (B.S.P.) raises question of retroperitoneal sarcoma or blastoma. As x-ray gives no help from G.U. or G.I. etiology would advise that peritonioscopy be done or that we be permitted to do a needle biopsy."

When insured left the hospital on January 14, 1948, the diagnosis recorded by Dr. Metzger was "retroperitoneal sarcoma."

Plaintiffs object to the relevancy of this medical history in accordance with their contention that the entire application must be excluded from the evidence pursuant to the Act of May 17, 1921, Article III, § 318, P.L. 682, 40 P.S. § 441.

This statute provides: *"All insurance policies,* issued by * * * mutual insurance companies * * * doing business in this State, in which the application of the insured * * * form[s] part of the policy or contract between the parties thereto, or ha[s] any bearing on said contract, *shall contain, or have attached to said policies, correct copies of the application as signed by the applicant* * * *; and, unless so attached and accompanying the policy, no such application * * * shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application * * * be considered a part of the policy or contract between such parties." (Emphasis added.)

The insured signed a self health certificate dated January 6, 1948. This certificate was delivered on January 10, 1948 by insured's brother to an agent of defendant when the brother paid the first premium thereon and received the policy. The certificate provided that it was an amendment to the application and further provided that it be made a part of the application. Notwithstanding this provision, the certificate was not attached to the policy.

Under these circumstances, I believe this case to be controlled by the decision in Sandberg v. Metropolitan Life Insurance Co., 342 Pa. 326, 20 A.2d 230.

In the Sandberg case, insured applied for insurance at "ordinary rates". Defendant refused to issue any insurance at such rates, but offered a policy at higher "intermediary rates". Insured agreed to this change, and signed an amendment changing his insurance to the higher rate plan. The policy was then issued as amended with insured's original application and medical examination attached to it. Contrary to the terms of the amendment, the amendment was not attached to the policy. The first premium was paid thereon. Insured died eight days after the policy was issued. Defendant sought to prove that insured gave fraudulent answers in his medical examination. The Pennsylvania Supreme Court held that no part of insured's application, which includes the medical examination, was admissible in evidence, and gave judgment for plaintiff.

In the instant case, as in the Sandberg case, an amendment which by its terms was part of the original application was not attached to the policy. In the Sandberg case the defense was not predicated on any provision of the missing amendment. But in the instant case the defense is or can be based in part on the provisions of the missing amendment.

In reaching its conclusion in the Sandberg case, the Pennsylvania Supreme Court said: "There can be no doubt but that when the Act of 1921 requires that a copy of the application be attached to the policy if it is to be considered a part of the contract, the Legislature meant that the whole application, as signed by the applicant, must be attached. A part of the application is not 'the application'. * * * The insured or beneficiary is entitled to have the whole application before him, if any part of it is to be used against him as a defense. In the instant case both the insured and the insurer agreed that the amendment should be part of the application for insurance, and it clearly appears that in and of itself it was a necessary part of the contract. Since it was not attached to the policy, as required by the Act of 1921, which is mandatory in its requirement, no other part of the application may be considered as part of the

contract. 'The omission of a part, which of course includes a supplementary part, operates to exclude the whole.' Fidelity Title & Trust Co. v. Metropolitan Life Insurance Co., supra, 305 Pa. at page 301, 157 A. at page 616. If the company has suffered an unnecessary loss it has resulted solely from its own negligence." Sandberg v. Metropolitan Life Insurance Co., supra, 342 Pa. at pages 328–329, 20 A.2d at page 231.

The health certificate in the instant case required by defendant was signed by the insured. By its terms it was a part of the application but was not attached to the policy. It follows that the whole application as signed by the insured was not attached to the policy. I therefore conclude that defendant's omission of part of the application operates to exclude the whole application, and that the policy should be received in evidence without any part of the application attached thereto.

With the application excluded from the evidence, the condition precedent referring to consultations or treatments by physicians no longer remains in the contract. Accordingly, the medical testimony loses its materiality and relevancy. Without this evidence, no valid defense is now set forth by the defendant.

Plaintiffs also urge that the application should be deleted from this policy because defendant had attached as Part II of the application, without insured's consent, the insured's answers given at the medical examination on November 13th for the prior policy, and because the self health certificate discussed above refers to a "Part II of my Application for Insurance dated Dec. 29th, 1947", thus implying there was a Part II dated December 29th that has not been attached to the policy.

In reply defendant relies on its custom of not requiring a second medical examination within sixty days of a prior examination to explain the absence of a Part II dated December 29th and the presence of the Part II dated November 13th. Defendant further urges that even if the Part II dated November 13th was improperly appended to the application, the plaintiffs were not injured thereby, and that the remedy is to determine plaintiffs' rights without this Part II, since

the crucial condition precedent is contained in the admitted Part I of the application.

My earlier determination in this opinion excluding the entire application because the defendant failed to attach the health certificate, makes it unnecessary for me to resolve these and other contentions.

### Conclusions of Law.

1. This Court has jurisdiction of this case.

2. The self health certificate is part of the application as signed by the insured.

3. The whole application as signed by insured was not attached to insured's policy; therefore, no part of insured's application is admissible in evidence.

4. The policy is admissible in evidence without the application attached thereto.

5. Insured's medical history and treatments by physicians are not relevant, and not admissible in evidence.

6. No valid defense is set forth by defendant.

7. Plaintiffs' motion for judgment on the verdict is granted in the amount of $3,000 with interest.

8. Defendant's motion for directed verdict in its favor is denied.

Orders may be submitted.

### On Defendant's Motion to Amend Findings of Fact and Conclusions of Law.

On March 30, 1951 I filed an opinion in this case wherein I made certain findings of fact and conclusions of law, and gave judgment for plaintiffs for $3000, the face amount of the life insurance policy here involved. My decision was based upon a finding of fact that a copy of the self health certificate dated January 6, 1948 and signed by Edmond Nacchio, insured, was not attached to his policy when delivered to his agent. To support their claim, however, plaintiffs had not relied upon the existence of this fact; accordingly, defendant had not attempted to prove that a copy of this certificate had been attached to insured's policy.

In order to introduce proof that this certificate had been so attached, defendant

filed a motion on April 23, 1951 to amend the findings of fact and conclusions of law, which motion is now before me.

Hearings on this motion were held. Testimony was taken and depositions were filed.

On the basis of this testimony and the depositions, I find as a fact that a copy of this self health certificate was attached to Edmond Nacchio's policy when the policy was delivered to his brother.

I further find as a fact that in connection with insured's application for this life insurance policy, insured was not given any medical examination whatsoever, as might be implied from the self health certificate, but that defendant attached a medical examination dated November 13, 1947 in accordance with its custom of not requiring a second medical examination within sixty days of a prior examination.

The crux of this case remains the same —the admissibility of the application or any part thereof into evidence.

In view of these new findings of fact, my previous discussion of law in this case is no longer applicable. Instead of having failed to attach to the policy the whole application as signed by insured, which failure prevented any part of the application from being admitted into evidence, defendant has now proved that it attached more than the whole application.

No Pennsylvania cases have been called to my attention wherein the question of "too much" rather than "too little" has been attached to a policy as part of insured's application.

In these circumstances the logical thing to do, it seems to me, is to rule out those papers included in the insurance contract that were not part of the whole application as signed by insured, cf. Fidelity Title & Trust Co. v. Metropolitan Life Insurance Co., 305 Pa. 296, 157 A. 614, and to leave in only those parts of the application that do comprise the whole application.

By such a ruling the whole application may be admitted into evidence, and each side will have before it only those papers upon which it is entitled to base its case.

An insurance company should not be penalized for attaching too many papers to insured's policy so long as the whole application as signed by insured is included in the attached papers.

In this manner, the requirements of the Act of May 17, 1921,[1] are complied with, and the protective purpose of that statute is not defeated. Sandberg v. Metropolitan Life Insurance Co., 342 Pa. 326, 328–329, 20 A.2d 230.

The whole application as signed by insured consists of "Application to the New York Life Insurance Company—Part I" dated December 29, 1947, and the self health certificate dated January 6, 1948. Copies of both were attached to insured's policy when it was delivered to insured's agent, his brother, and both may be admitted into evidence as part of the insurance contract.

Part I of the application for insurance provides in part: "It is mutually agreed as follows: 1. That the insurance hereby applied for shall not go into force unless and until the policy is delivered to and received by the Applicant and the first premium thereon paid in full during his lifetime, *and then only if the Applicant has not consulted or been treated by any physician or practitioner * * * since the time of making this application if no medical examination is made, and thereupon the policy shall be deemed to have taken effect as of the date specified * * * above*". (Emphasis supplied.)

This quoted provision is a condition precedent to the effectiveness of the policy. Benzinger v. Prudential Insurance Company of America, 317 Pa. 561, 176 A. 922.

The medical history of insured, as set forth in the filed stipulation of facts and related in my prior opinion, is now relevant to prove insured's failure to comply with this condition precedent.

Accordingly, defendant's motion to amend the findings of fact and conclusions of law will be granted.

1. Act of May 17, 1921, Art. III, § 318, P.L. 682, 40 P.S. § 441.